EDWARD A. FISKE *vs.* ZONING BOARD OF REVIEW OF THE TOWN OF EAST PROVIDENCE.

DECEMBER 6, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

See, also, 70 R. I. 426.

Capotosto, J.  This is a petition for a writ of *certiorari* to review the action of the zoning board of review of the town of East Providence, hereinafter referred to as the board, in denying the petitioner's application for certain exceptions or variations under the zoning ordinance of that town. The writ was issued and the record of the board was certified to this court.

It appears from the record that the petitioner, who operates a dairy business at the corner of Wilson and Washburn avenues in East Providence, in this state, is the owner of two lots on Wilson avenue, which lots are numbered 78 and 66 on assessors' plat 34 of that town. Wilson avenue runs approximately east and west. He bought lot 78 in 1921 and has used it in connection with the dairy business since that time. In 1926 the town adopted a zoning ordinance. Under this ordinance lots 78 and 66, the latter of which is next easterly to the former, were both included in a residence "A" zone, the highest zoning use established by the ordinance. As lot 78 was then actually used for business, such use was permitted by the ordinance as a nonconforming use.

The petitioner bought lot 66 "about 1936". On this lot and approximately 60 feet from the easterly line of lot 78, there is an existing cement driveway, some ten feet wide, extending from Wilson avenue for a considerable distance

into lot 66, a portion of which driveway has heretofore been rightfully used to serve a large one-family dwelling house, a two-car garage, a barn and several other small buildings on that lot. The dwelling house is occupied by the petitioner as his home. It is important to keep in mind that this driveway runs approximately north and south only, practically parallel with the division line between lots 78 and 66. In other words, this driveway does *not now cut across* lot 66 in a westerly direction to lot 78.

In 1944 the petitioner applied to the board for an exception to the zoning ordinance so that he might construct an addition, about 59 feet in length and 18 feet in width, to the easterly side of an existing dairy building on lot 78, which building was nine feet from the division line between lots 78 and 66. The southerly 18 feet of the proposed addition was to be approximately 90 feet from the northerly line of Wilson avenue. By the erection of the proposed addition, the nonconforming use on lot 78 would therefore be extended nine feet into lot 66.

After several hearings, at which the owners of neighboring property objected vigorously to the granting of the petition, their objections being based mainly on the grounds that the entire district was wholly residential and that the petitioner should not be permitted to enlarge his nonconforming use, the board granted the petition upon the condition that the petitioner "shall only be allowed to use lot 66 from the present proposed addition running 9 feet parallel with lot 78 to Wilson Avenue." *Fiske* v. *Zoning Board of Review*, 70 R. I. 426.

The petitioner thereafter filed in this court a petition for a writ of *certiorari* to review this decision of the board alleging, among other things, that "the restriction of the Zoning Board of Review with respect to the access of said proposed and granted addition contained in its said decision . . . nullifies and renders valueless the right accorded to the petitioner to erect said proposed addition . . . ." That petition for *certiorari* prayed that the portion of the decision of

the board which in effect denied to the petitioner the use of the cement driveway be quashed and that there be inserted in place thereof the following language: "and said petitioner may have access to said proposed and granted addition by means of said present driveway located on said Lot 66 for all purposes for which said proposed addition may be used." In that case, petitioner's contention on this point was that the use of the cement driveway on lot 66, which driveway is directly involved in the instant case, was necessarily incidental to his application for the proposed addition and the granting thereof. That petition for *certiorari* was denied and dismissed by us without prejudice. *Fiske* v. *Zoning Board of Review, supra.* During the pendency of that case or immediately thereafter the petitioner built the new addition.

In his petition for an exception to the zoning ordinance in the case at bar the petitioner asks: (1) That he be allowed to use the cement driveway on lot 66 in connection with the dairy building and approach thereto from Wilson avenue as extended by the board into lot 66; and (2) that he further be allowed to use a portion of that lot, approximately 70 by 90 feet, for storing and parking trucks and other vehicles used by him or others in connection with the dairy business. The portion of lot 66 which the petitioner now desires to use for storing and parking trucks and other vehicles begins at a point in the westerly line of lot 66 approximately 90 feet northerly from Wilson avenue, thence northerly along said line about 93 feet to the northeasterly corner of lot 78, thence turning a right angle and running easterly 70 feet, thence turning and running southerly for about 90 feet, thence turning a right angle and running westerly 70 feet to the point of beginning.

We recall at this point that the cement driveway on lot 66 was originally 10 feet wide and about 60 feet easterly from the division line between lots 78 and 66. If widened to 20 feet, as requested, such driveway would be about 41 feet from the nine-foot strip of lot 66 which the board allowed the petitioner to use as a nonconforming use in connection with

the new addition hereinbefore mentioned. If both of the exceptions requested by the petitioner in the instant case were granted, it would leave a portion of lot 66, approximately 90 by 41 feet, hereinafter referred to as area X for convenience, as a pocket between the easterly line of lot 78 as previously extended by the board for a nonconforming use and the westerly side of the cement driveway, which area would continue to be zoned for residential purposes under the ordinance.

We note at this point that the exception which the petitioner seeks with reference to the cement driveway is far broader than appears on first impression. In substance and effect he is not only asking for the use of the original cement driveway for commercial purposes, but he is also asking that he be permitted to enlarge that driveway to a width of 20 feet and to add an arm or extension thereto, running in a westerly direction across land of lot 66, now zoned for residential purposes, for a distance of about 41 feet to the new addition which he was permitted to build on that lot and to which he was granted an approach from Wilson avenue. If the cement driveway and the proposed widening and extension thereof were allowed to be used for commercial purposes, it would leave land of lot 66 zoned for residential use to the east of the cement driveway and to the north and south of the extension thereof, a circumstance which was well within the power of the board to consider.

Several hearings were held by the board on the petition and evidence was submitted. The petitioner's testimony was, in substance, that if he were allowed the use of the existing cement driveway with the proposed extension, he could conduct his growing business more expeditiously and without incurring great expense in the hiring of more help, in the rearrangement of a certain portion of the interior layout of the dairy, and in the construction of another driveway on the nine-foot strip of lot 66 from Wilson avenue to the southerly end of the new addition, which additional driveway, according to him, would add to the commercial aspect of the

property. He further testified that Wilson avenue in the vicinity of the dairy would be freed from vehicular congestion if he were permitted to use the cement driveway as above indicated and were further allowed to use that part of lot 66 hereinbefore described for the storage and parking of trucks and other vehicles.

The owners of property in that vicinity again objected vigorously, in person, by attorney and by written communications to the board, to the granting of either of the exceptions sought by the petitioner. They urged, in general, that the entire district for a considerable distance had been and was wholly residential; that, when the petitioner bought lot 66, he knew that it was zoned for residential purposes; and that he should not now be permitted to further enlarge his nonconforming use, as each such enlargement would tend to change the provisions of the ordinance by means of exception rather than by proper method and thus be increasingly detrimental to the value and enjoyment of their respective properties for residential purposes.

The objectors also presented as a witness a well-known architect, with experience in the construction of dairies, who testified that the petitioner could obviate most, if not all, of his difficulties by widening the upper easterly portion of the existing main driveway from Wilson avenue to the dairy, the easterly side of which driveway is on lot 78 and not more than 20 feet from the division line between lots 78 and 66, so that such driveway would extend in front of the southerly side of the new addition; and, further, that such change, at an estimated cost of $800, would make it unnecessary to build a new driveway on the nine-foot strip of lot 66, or to use the cement driveway under consideration here.

The evidence further shows that when the petitioner built a door on the southerly side of the new addition, he varied from the original plan submitted to the board in his first application for an exception. The reason why this change was made appears in the following answers by the petitioner to questions from his own counsel: "Q. And you built the

extension which was granted to you on August 15 of last year exactly in accordance with the plans and specifications? A. Yes. Q. Is there not some change in the south part of it? A. We left a door in the front because we did not know whether we were going to use the side. Q. What kind of door? A. An overhead or unloading door. Q. An emergency door? A. Yes. So that if we can't use the other (a door shown on the plan on the easterly side of the new addition facing the cement driveway under consideration here) we would have it to use."

In addition to the evidence, which for clarity we have outlined in some detail, the board took a view of the premises and thereafter denied the petition in a written decision, which, in substance, is based on the following grounds: First, that the denial of the exceptions would not result in any unnecessary hardship to the petitioner; and, secondly, that the granting thereof would unduly conflict with the public interest as expressed in the ordinance, in that such grant would be contrary to the general welfare and seriously affect the use and value of neighboring properties for residential purposes. It appears from the language of the decision that the board construed the proof in support of the exceptions as showing that the petitioner requested them more for convenience than through necessity in the true meaning of that word. In the course of its decision the board pointed out that, when the petitioner bought lot 66 in 1936, he knew that the lot was then in a residence A zone; that with the prior extension of the nonconforming use for a distance of nine feet into lot 66 from Wilson avenue to the new addition, he had ample means to meet "his practical needs" in carrying on the dairy business; and that, with such knowledge and opportunity, he could have arranged the interior setup of his plant "in such a manner as to make the most efficient use of the approaches granted and available."

Nowhere in the record before us does the petitioner claim that he could not use the new addition without the grant of his application for use of the cement driveway, nor that by

its denial he would be deprived of all beneficial use of such addition or be otherwise subjected to unreasonable hardship. The evidence is also clear that the use of the portion of lot 66 hereinbefore described for the storage and parking of trucks and other vehicles would be of great convenience to the petitioner, but there is nothing to show that he is unreasonably hampered and restrained in the conduct of his business without the right to such use, which is clearly inconsistent with the spirit and purpose of the ordinance.

When we consider the petitioner's application for the use of the cement driveway, such application in substance seeks to extend his nonconforming use for a distance of approximately 61 feet on Wilson avenue, that is, 41 feet from the extension previously granted to him plus 20 feet, which is the proposed width of the cement driveway. The board was entitled to consider the effect that would follow the granting of such application upon area X, which would then be left in a residential zone with land devoted to commercial use on both sides of that area.

Furthermore, the board had the right to consider the uncontradicted evidence from an architect with experience in the building and setup of dairies that the petitioner could, if he so desired and at reasonable cost, adequately serve the new addition by enlarging the apron of the main driveway so as to extend it to the front of that addition. In the opinion of this expert, there would then be no necessity to use either the cement driveway or to build a new driveway on the nine-foot strip of lot 66, which the board in its prior decision allowed the petitioner to use for commercial purposes.

The petitioner may find himself inconvenienced to some extent in the conduct of his growing business by a denial of the exceptions sought by him, but any inconvenience that he may now experience is the result of his buying lot 66 in 1936, when he knew or should have known that the zoning ordinance, which had then been in force since 1926, put that lot in a residence A zone. Furthermore, the fact that some additional expense might be necessary to make his property

more adaptable or convenient or profitable for business is not in itself sufficient ground to require the granting of an exception to a zoning ordinance. *Ricci* v. *Zoning Board of Review,* 72 R. I. 58. We have also uniformly held in a series of cases that the decision of a zoning board of review on a petition for an exception or variation in the application of a zoning ordinance, when the petition is addressed to the board's discretion, will not be set aside unless it clearly appears that the board acted arbitrarily and abused its discretion. *Olevson* v. *Zoning Board of Review,* 71 R. I. 303, and cases cited.

The board in the instant case is composed of residents of the town of East Providence and they, as was said in *Roberge* v. *Zoning Board of Review,* 157 A. (R. I.) 304, "should be and without doubt are familiar with the local conditions and needs." Moreover, the board here inspected the premises and viewed the neighborhood before denying petitioner's request for the extension of a nonconforming use. In *Drabble* v. *Zoning Board of Review,* 52 R. I. 228, at page 232, this court said that the extension of a nonconforming use is particularly one for consideration by the board since in cases of this nature there are often numerous elements to be considered which can only be understood from a thorough knowledge of the surrounding property, its nature and use. See also *Syrian Orthodox Society* v. *Zoning Board,* 53 R. I. 232. The case of *East Providence Mills, Inc.* v. *Zoning Board,* 51 R. I. 428, is inapplicable in the circumstances of the instant case because of clear differences in the facts of the two cases, one of the most important being that the land sought to be excepted from the provisions of the ordinance in the cited case was bought by the petitioner *before* enactment of the ordinance.

In *Heffernan* v. *Zoning Board,* 50 R. I. 26, at page 30, this court said: "In appealing to the discretion of the board of review for a variance of the provisions of the ordinance the burden was upon the petitioner to satisfy the judgment of the board that such variance would not be unduly in conflict with the public interest as expressed in the ordinance, and also that the literal enforcement of its provisions would re-

sult in a peculiar hardship or loss to him of a very serious character, the imposition of which was not required for the purpose of enforcing the general scheme of the ordinance and hence amounted to the placing of an unnecessary hardship upon him." Unless a petitioner is held to such proof, a board of review would have the power, which it does not have, to nullify the ordinance under the guise of variations or exceptions. This is especially so where a nonconforming use is involved and its extension is sought, as in the instant case, by proof which, when fairly considered as a whole, shows that the petitioner seeks two variations or exceptions for the convenience of a growing business rather than because the application of the provisions of the ordinance would result in placing an unnecessary burden on him, which was not required for the purpose of enforcing the ordinance in the protection of the public health, safety or welfare.

After a careful consideration of all the evidence in the instant case we are of the opinion that there has been no abuse of judicial discretion by the board in denying the petition for the proposed extensions of the nonconforming use of the premises in question.

The decision of the respondent board is affirmed, the writ of *certiorari* is quashed, and the papers in the case are ordered remitted to the respondent board.

CONDON, J., dissenting. I dissent from that part of the court's opinion which holds that the board of review did not abuse its discretion in denying petitioner permission to use the cement driveway on lot 66 in connection with the conduct of his dairy. Such denial was inconsistent with the board's prior decision granting the petitioner permission to use a strip of land not more than nine feet wide and immediately adjacent to the extension of the dairy building on lot 66. See *Fiske* v. *Zoning Board of Review*, 70 R. I. 426.

In so far as the use of such lot for the purpose of a driveway in connection with the dairy business is concerned, the only difference between the permitted use and the nonper-

mitted use is merely a matter of distance. If the use of the existing cement driveway was permitted it would bring the vehicular traffic in and out of the lot in connection with the dairy about 50 feet nearer to the homes of the objecting landowners situated east of lot 66. If a driveway for use in connection with the dairy building is to be permitted at all on that lot, this fact would hardly constitute a reasonable ground of discretion for the board to deny petitioner's request that he be permitted to use the existing cement driveway instead of building a new one on the nine-foot strip. Indeed it is difficult, in such circumstances, to find anything more than caprice as a basis for the board's denial of petitioner's request. Had it not, in its prior decision, granted petitioner a right of access into the lot over the nine-foot strip it would perhaps not be so clear that the board had abused its discretion in denying petitioner's present application; but in view of such prior decision there cannot, in my opinion, be any doubt of such abuse, at least on the record here.

When, in considering petitioner's first .application, the board undertook to decide whether he should be entitled to use a part of lot 66 in connection with the conduct of his dairy in the extension of the dairy building which the board had permitted on that lot, it exhausted its discretion. Having once found, as it must have under the statute and ordinance, that such a use of lot 66 would not be contrary to the public interest and that a literal enforcement of the ordinance would result in unnecessary hardship to the petitioner, the board could not reasonably deny him the right to use the existing driveway unless it could be shown that, merely because the cement driveway was 50 feet nearer to the land of some of the objectors to the east of lot 66, such use would be contrary to the public interest to a marked degree. The evidence before the board falls far short of showing such an adverse effect upon the public. The effect upon the sensibilities of some nearby landowners is of no consequence. It is the public interest that must be shown as adversely affected, and that in a marked degree.

228

This court has given zoning boards of review a guide to follow in passing upon applications of the kind now before us. In *Heffernan* v. *Zoning Board of Review*, 50 R. I. 26, at page 29, it said, construing the statute authorizing boards of review to grant an exception or variance, "The expressions 'contrary to the public interest' and 'unnecessary hardship' must be given a reasonable interpretation. As the provisions of the ordinance represent a declaration of public interest, any variance would in some measure be contrary thereto. In this connection the words 'contrary to the public interest' should be interpreted to mean what in the judgment of a reasonable man would unduly, and in a marked degree conflict with the ordinance provisions. As to the words 'unnecessary hardship,' it may be said that each of the restrictions of the ordinance upon what would otherwise be a lawful use of one's property might be termed a 'hardship' to the owner. We regard the term 'hardship', as used in the ordinance, to have some reference to the degree of the interference with ordinary legal property rights, and to the loss or hardship which would arise therefrom. We think the expression should be interpreted to refer to a 'hardship' peculiar to the situation of the applicant, which is of such a degree of severity that its imposition is not necessary to carry out the spirit of the ordinance, and amounts to a substantial and unnecessary injustice to the applicant."

Tested by that standard the board's denial of the petitioner's application in the case at bar is, in my opinion, without any reasonable basis and is, therefore, arbitrary and capricious. On the record here it is obvious that petitioner's use of the existing driveway would in no sense be contrary to the public interest in a marked degree and it is equally obvious that to build a new driveway on the nine-foot strip would be an unnecessary hardship on the petitioner and would not be called for in order to carry out the spirit of the zoning ordinance. The board's denial of petitioner's application for permission to use the existing cement driveway should, therefore, be reversed.

## ON MOTION FOR REARGUMENT

### JANUARY 21, 1947.

PER CURIAM. After our decision in the above case the petitioner asked and received permission to file a motion for reargument. Pursuant to this permission he has filed such a motion, setting out therein certain reasons on which he bases his contention that justice requires a reargument of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.